IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| AISHA GASE, | ) | CASE NO. 1:20-CV-01401 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| | ) | |
| Defendant. | | |

**Introduction**

Before me[1] is an action under 42 U.S.C. § 405 by Alisha Gase[2] seeking judicial review of the 2019 decision of the Commissioner of Social Security that denied Gase's 2018 application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] Under terms of my initial[5] and procedural[6] orders, the parties

---

[1] ECF No. 22. The parties consented to my exercise of jurisdiction and the matter was transferred to me by United States District Judge Sara Lioi.
[2] ECF No. 1.
[3] ECF No. 11.
[4] ECF No. 12.
[5] ECF No. 7.
[6] ECF No. 13.

1

have briefed their positions[7] and filed supplemental fact sheets.[8] They have met and conferred with the objective of clarifying or reducing the matters at issue.[9] They have participated in a telephonic oral argument.[10]

For the following reasons, the decision of the Commissioner will be affirmed.

## The ALJ's Opinion

Gase, who was 35 years old at the time of the hearing,[11] has a college education,[12] is married and lives with her husband and a young daughter.[13] She previously worked as a clinical assistant and dispatcher,[14] as well as briefly owned her own business.[15]

The ALJ found that Gase has the following severe impairments: bipolar disorder with depression and generalized anxiety disorder.[16] In addition, the ALJ found that Gase was obese, but found that she experiences no notable complications from this condition and, when analyzed pursuant to SSR 02-01p, Gase's obesity "caused no more than minimal limitations in [her] ability to perform basic work activities."[17]

---

[7] ECF Nos. 15 (Gase), 18 (Commissioner), 19 (Gase reply).
[8] ECF Nos. 15, Attachment 1 (Gase), 18, Attachment 1 (Commissioner).
[9] ECF No. 20.
[10] ECF No. 24.
[11] Tr. at 51.
[12] *Id*. at 45.
[13] *Id*. Another older child lives out of state with his father. *Id*. at 71.
[14] *Id*. at 50.
[15] *Id*. at 70.
[16] *Id*. at 44.
[17] *Id*.

2

The ALJ then found that Gase does not have an impairment or combination of impairments that meets or medically equals a listed impairment.[18] To that point, the ALJ specifically considered Listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders).[19] In particular, he examined the four "paragraph B" criteria that are common to those listings. He found that Gase has no limitation in the area of understanding, remembering and applying information but has moderate limitations in the remaining areas of interacting with others; concentrating, persisting and maintaining pace; and adapting or managing oneself.[20] He further found that the "paragraph C" criteria were not met because Gase can manage her own personal needs independently, takes care of a baby and runs the household.[21]

The ALJ found that Gase has the residual functional capacity for a full range of work at all exertional levels but with the following non-exertional limitations: [Gase] can perform routine tasks in a low stress environment (no fast pace, strict quotas or frequent duty changes) involving superficial interpersonal interactions with coworkers and supervisors (no arbitration, negotiation or confrontation), and no interaction with the general public as a job requirement.[22]

In formulating the RFC, the ALJ analyzed and discussed both Gase's testimony as to her own limitations and the clinical and opinion evidence. First, the ALJ summarized

---

[18] *Id.* at 44-46.
[19] *Id.* at 44.
[20] *Id.* at 45.
[21] *Id.* at 46.
[22] *Id.*

3

Gase's testimony as alleging that she is disabled from generalized anxiety disorder, bipolar disorder and depression.[23] She further maintained that her medications were ineffective and that she continued to experience symptoms of anxiety, panic attacks and mood swings.[24] She described herself as having no interest in personal hygiene (her husband has to remind her to change her clothes and showers once a week), or in cooking, cleaning or eating properly.[25] She stated that she has no friends and goes shopping early in the morning to avoid people.[26]

The ALJ, however, found that Gase's statements about the intensity, persistence and limiting effects of her symptoms was not consistent with the evidence.[27]

In that regard, the ALJ reviewed clinical records from "a mental health provider that demonstrated improvement with treatment."[28] Specifically, the ALJ reviewed reports from two clinical visits in July 2017 plus follow up visits through January 2019.[29] He cited the second July visit of 2017 as showing a "much improved" mental health status and characterized the succeeding visits as "continu[ing] to show improvement.[30] Significantly, the ALJ cited 13 visits where Gase was characterized as "doing well on medications, anxiety and depression were controlled with medications, and symptoms were better or

---

[23] *Id.* at 47.
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.* at 47-48.
[30] *Id.* at 47.

decreased."[31] He then cited 12 additional clinical notes that he summarized as reflecting her "overall improvement [that] routinely referenced an improved status."[32]

More recently, the ALJ discussed a January 2019 visit where Gase reported vivid nightmares, severe depression and moderate anxiety.[33] Yet, at the same visit, she also reported decreased mood swings and no panic attacks, irritability, anger, racing thoughts, binge eating, concentration changes, impulse control problems or memory loss.[34] Thus, her overall treatment status was found to be "much improved."[35]

As to opinion evidence, the ALJ considered an April 2018 questionnaire completed by Vinod Bhandari, M.D., a treating source, who had seen Gase since June 2017.[36] Dr. Bhandari opined, *inter alia*, that Gase decompensates when not medicated but with mediation has shown significant improvement.[37] As examples of improvement, Dr. Bhandari pointed to visits of December 2017, January 2018 and March 2018.[38] Also on the specific topic of improvement from medications, the ALJ then noted that Gase's comment that her medications were ineffective was not supported by 26 clinical entries that showed

---

[31] *Id*. at 47-48.
[32] *Id*. at 48.
[33] *Id*.
[34] *Id*.
[35] *Id*.
[36] *Id*.
[37] *Id*.
[38] *Id*.

5

her mental condition improving and that when she was compliant with her medications, symptoms decreased or subsided.[39]

As to the opinions of the state agency consultants, the ALJ first found that the opinion of Dr. Michael Hallet, M.D., the medical consultant, was persuasive.[40] Dr.Hallet found no severe medically determinable impairment, which the ALJ found to be consistent with examinations that found Gase to be functioning within normal limits.[41] As to the opinions of both state agency psychological consultants, the ALJ here also found them to be persuasive.[42] In particular, the ALJ found that these opinions are "consistent with treatment for depression and anxiety symptoms that resulted in improvement with medication."[43] He also found the opinions consistent with "examinations that showed stable mental functioning within normal limits."[44]

Finally, the ALJ addressed the January 31, 2019 medical source statement of Stephanie Harris, CNP, Psychiatric Nurse Practitioner.[45] While acknowledging on the record the "duration of treatment provided by Ms. Harris as a mental health specialist," the ALJ found her opinion "less persuasive" because it was inconsistent with Harris' own treatment notes.[46] In that regard, the ALJ first cited to treatment notes "routinely" showing

---

[39] *Id*. at 49.
[40] *Id*.
[41] *Id*. at 49.
[42] *Id*.
[43] *Id*.
[44] *Id*.
[45] *Id*. at 50.
[46] *Id*.

6

that Gase was oriented, cooperative, well groomed, with normal speech, normal impulse control and fair to good insight and judgment.[47] He then emphasized treatment notes from Harris that demonstrated Gase improved with treatment, reporting "decreased and controlled symptoms, and that her medications worked well."[48] Moreover, the ALJ found that the limitations and restrictions opined by Harris were inconsistent with the information on the April 2018 questionnaire signed by Dr. Bhadari.[49]

Then, after finding that Gase could not perform any past relevant work under the scope of the RFC, the ALJ, with the testimony of a VE, found that Gase could perform the requirements of four positions – store laborer, cleaner II, marker and cleaner – and that jobs for these positions exist in sufficient number in the national economy.[50]

Thus, Gase was found not disabled.[51]

## Issues on Judicial Review

Gase presents two issues on judicial review:

1.     The ALJ committed harmful error when he failed to properly evaluate the evidence documenting Gase's severe psychological impairments and when he failed to properly consider and weigh the opinion of the treating source in violation of 20 CFR §§ 404.1520c and 416.920c.

---

[47] *Id*.
[48] *Id*.
[49] *Id*. at 50-51.
[50] *Id*. at 51-52.
[51] *Id*. at 53.

2. The ALJ committed harmful error when he failed to satisfy his burden at Step Five of the Sequential Evaluation.[52]

## Analysis

**A. Standards of Review**

Initially I note that this matter is considered under the well-established standard of substantial evidence, which need not be restated here. Further, because the application for benefits was filed after March 3, 2017, the evaluation of the opinion evidence is conducted under the new rubric that replaced the long-standing treating source rule with a test that requires the ALJ to determine the persuasiveness of an opinion by reference to how well supported the opinion is and how consistent it is with other evidence.[53]

**B. Application of Standards**

This case involves both a situation where the claimant experiences "good days and bad days," but also a situation where, as the ALJ's opinion suggests, a potential common denominator to the "bad days" may be a claimant's lack of compliance with medication.

Here, Gase contends that the ALJ erred in assessing Harris' opinion by ignoring the fact that Harris gave her opinion nine months after Dr. Bhandari submitted his "brief"

---

[52] ECF No. 15 at 1.
[53] 20 C.F.R. § 416.920c.

8

questionnaire and thus ignored that "there was no evidence that [Harris' condition] did not change during those nine months."[54]

In fact, the ALJ, as noted above, focused on the fact that a key to explaining that any fluctuating severity in Gase's symptoms was generally due to her medication. Unlike, for example, symptoms of fibromyalgia that are consistently and notoriously unpredictable and therefore extremely difficult to assess in the context of a claimant's capacity to engage in full-time employment, the ALJ here identified and commented on the numerous instances where treatment and exam notes document that Harris was consistently doing well when she was on her medication. Thus, Gase's concern that the ALJ failed to show that her condition "changed" between Dr. Bhandari's opinion and that of Harris misses the point, stated often by the ALJ, that her condition involves good days and bad days, where the number of bad days can generally be reduced by medication.[55]

As the Commissioner notes,[56] the ALJ considered exactly such a longitudinal record here, reviewing treatment notes from 2017 to January 2019, observing that the last exam note in 2019 concluded that her overall treatment status was "much improved."

---

[54] ECF No. 19 at 1.
[55] Indeed, Gase herself notes that "psychological impairments are not stagnant." ECF No. 15 at 11. She further accepts that she has had good periods and bad periods. *Id*. at 11. However, in this analysis in her brief she does not also address the concepts, fully articulated by the ALJ in his opinion, that the good periods are connected to her medication and that the reduced symptoms in those periods support the limitations of the RFC.
[56] ECF No. 18 at 6.

9

Therefore, as detailed above, I find no error in the ALJ's careful and specific review of the evidence that gave, on the record, numerous examples of the reduction of symptoms with medication. That review, and the evidence cited therein, constitutes substantial evidence to support the RFC.[57]

I add that Gase's challenge to the Step Five finding is based on her belief that the hypothetical question posed to the VE was lacking in some additional limitations that were not include in the RFC.[58] Because, as noted above, I find the RFC as given by the ALJ to be supported by substantial evidence, there is no ground for claiming now that the hypothetical question based on the RFC is deficient.

## Conclusion

For the reasons stated, I find that the decision of the Commissioner is supported by substantial evidence and so is affirmed.

IT IS SO ORDERED.

Dated: September 30, 2021            s/William H. Baughman Jr.
                                     United States Magistrate Judge

---

[57] *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").
[58] ECF No. 15 at 17.